# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

QUAWNTAY ADAMS,

Petitioner,

v.                                    **Civil Case No. 13-cv-170-DRH**
                                      **Criminal Case No. 04-cr-30029-DRH**

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.  Introduction

This matter is before the Court on petitioner Quawntay Adams' motion to

vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1). For

the reasons stated below, Adams' motion is **DENIED**.[1]

Adams' arrest arose from his involvement in a reverse sting operation. He

accepted a key to a van in which the government placed 1,400 pounds of

marijuana. A jury convicted Adams on charges that he possessed more than 100

kilograms of marijuana with the intent to distribute, *see* 21 U.S.C. § 841(a)(1)

and (b)(1)(B)(vii), and conspired to commit money laundering, *see* 18 U.S.C. §

---

[1] Having closely examined the record before it, the Court concludes Adams' claims do not warrant an evidentiary hearing. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *see also* Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings.

1956(a)(1)(A)(I) and (h). The jury acquitted Adams of conspiracy to possess with intent to distribute marijuana. *See* 21 U.S.C. §§ 841(a)(1) and 846. At the outset of trial, Adams pleaded guilty to attempting to escape from custody, *see* 18 U.S.C. § 751(a).

On direct appeal, the Seventh Circuit held the evidence did not support the conviction for conspiracy to commit money laundering but otherwise affirmed the judgment of conviction and remanded for resentencing. *United States v. Adams,* 625 F.3d 371 (7th Cir. 2010).[2]

On remand, without the money laundering conviction, this Court sentenced Adams to the same sentence it imposed upon him previously, a total custody sentence of 420 months (Cr. Docs. 478 and 523), due to his status as a career offender. The Seventh Circuit affirmed the sentence this Court imposed on remand. *See United States v. Adams,* 451 Fed. App'x. 576 (7th Cir. 2011).

Adams raises fourteen claims for relief which fall within several general categories of grievances. As to Adams' various claims of ineffective assistance of counsel, the Court notes the following attorneys represented Adams over the course of his criminal proceedings: the Federal Public Defender, Grant Shostak, Evelyn Lewis, Grant Shostak again, Steven Stenger, James Gomric, Scott Rosenblum, John Rogers, Adam Fein, Andrew Hale, and then James Gomric again. On Appeal, Adam Fein represented Adams. Adams asks that the Court, "[h]ave an evidentiary hearing to allow defendant to prove his claims, vacate the

---

[2] For a more complete factual summary of Adams' criminal conduct, the Court directs the reader to this opinion.

guilty verdict on count two [possession] and resentence as the decision of this court would require."

## II.   Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).  Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental

miscarriage of justice. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Moreover, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

Adams raises various claims of ineffective assistance of counsel. Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the

second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696. A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, a petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

### III. Application

**1. Possession of Marijuana**

 **a. Claims 6, 8, 9, 10, 11, and 14**

Adams' claims 6, 8, 9, 10, 11, and 14 all relate to his conviction for possession of 100 kilograms or more of marijuana with the intent to distribute. Adams argues he did not have the ability to control the 1,400 pounds of marijuana located in the disabled cargo van to which he accepted the keys from the ICE agents and was sitting in at the time of his arrest.

Adams argues "control" of the marijuana remained with the agents. Adams could not access and thus "control" the marijuana as it was located in a part of the van to which he did not have a key. And further, a metal cage separated Adams from the area where the marijuana was stored.

On direct appeal, Adams challenged the sufficiency of the evidence underlying his possession conviction. The Seventh Circuit summarized Adams' argument as follows:

> [B]ecause the battery had been disconnected and the vehicle was consequently inoperable, and he had no other means of leaving the truck stop with multiple officers waiting to arrest him, Adams contends that he could not have actually or constructively possessed the marijuana in the sense of having the ability to control it. At best he may have *attempted* to possess the marijuana, Adams reasons, but he was not charged with an attempt.

*Adams,* 625 F.3d at 382.

In finding the evidence sufficiently supported Adams' possession conviction, the Seventh Circuit notably distinguished Adams' case from that of *United States v. Kitchen,* 57 F.3d 516, 521-24 (7th Cir. 1995). In *Kitchen,* the defendant had done nothing more before his arrest than pick up a kilogram of cocaine for two or three seconds. He then set it back down, expressing doubt about the quality of the drugs. "That fleeting moment when Kitchen had the cocaine in his hands in order to look it over was insufficient to manifest Kitchen's intent to complete the transaction and take the cocaine with him." *Adams,* 625 F.3d at 384 (citing *Kitchen,* 57 F.3d at 521-24). In contrast, the Seventh Circuit found, "Adams unequivocally manifested his assent to possession of the marijuana by taking the keys to the van, entering the van, and attempting to start it. This was the culmination of a transaction that Adams himself had initiated." *Id.* at 385. And it further noted,

> In the eyes of his coconspirators, Adams had a right to take possession of the marijuana once Crawford and Bortfeld had been

paid; and when Adams accepted the keys to the van, entered it, and attempted to engage the ignition, he amply signaled his willingness and intent to exercise that right. Allowing him a chance to drive away was not necessary to establish his possession of the marijuana.

*Id.* Thus, "Adams constructively possessed the marijuana once he accepted the keys to the van, and he actually possessed it once he entered the van and attempted to start it." *Id.* at 386.

The government is correct that Adams' claims cannot be re-litigated through his Section 2255 petition. The Seventh Circuit found the evidence sufficiently supported Adams' conviction for possession. Pursuant to the law of the case doctrine, an initial federal determination controls if, "(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." *Peoples v. United States*, 403 F.3d 844, 847 (7th Cir. 2005) (citing *Sanders v. United States*, 373 U.S. 1 (1963)). The ends of justice support relitigation when there has been a substantive change in the law or new evidence that could not have been discovered earlier comes to light. *Id.*

Adams' instant arguments do not significantly differ from those raised on direct appeal. Adams raises the same ground as that rejected on its merits by the Seventh Circuit, as the Seventh Circuit held the evidence supported Adams' conviction for possession. Adams has not pointed to a change in law and he does not argue that new evidence has come to light that could not have been discovered earlier. Thus, this Court shall not relitigate Adams' proposed ground for relief.

As to Adams' claims of ineffective assistance of counsel for not raising his specific possession-related arguments, Adams has clearly not met his burden under either prong of *Strickland.* Counsel's representation is assessed as a whole. *See id.* at 848. Adams believes his specific arguments would have had more success than those his counsel pursued. However, counsel is not ineffective for failing to raise every non-frivolous argument available to him. In this Court's opinion, effective assistance generally requires focus on the strongest arguments available. It does not require inundating the courts with every possible mutation of a given argument. Adams' onslaught of repetitive filings to this Court, filed under the guise of "summaries" of his various claims, demonstrates that this is a concept Adams does not appreciate.

Regardless, Adams' specific arguments would have not changed the outcome at Adams' trial or on appeal. Adams focuses on the physical barrier between himself in the passenger seat and the fact that the marijuana was contained in the cargo area. The Seventh Circuit found Adams constructively possessed the marijuana from the moment he accepted the key[3] to the van. Further, the government offers affidavits of the agents involved stating that the single key to the van provided Adams access to the cargo area (Docs. 9-2, 9-3, and 9-4). Thus, Adams' various attorneys were not ineffective for failing to raise Adams' specific possession-related arguments.

---

[3] The agents note that while they testified at trial in reference to "keys" they used the plural form idiomatically, as there was in fact a single "key" to the cargo van.

### b. Chain of Custody and Possession–Claim 6[4]

Adams argues his attorneys were ineffective for "(1) stipulating to and failing to make the government prove, the chain of custody; (2) failing to argue to the jury that the government had not *officially* transferred *custody* of the marijuana to Adams at the truck stop; and, therefore, (3) Adams did not have the ability to 'control' the drugs."

Adams refers to "Defendant's Stipulation Regarding United States of America's Motion in Limine Re: Chain of Custody," filed by Rosenblum (Cr. Doc. 347). Rosenblum stipulated to chain of custody matters regarding the marijuana, in response to the government's assertion that,

> From and since their recovery, at all times the said exhibits have been in official custody and the Government has no indication of any manner of tampering therewith.

> Absent any proof of tampering, the Government is entitled to a presumption of regularity in the chain if the exhibits were at all times held in official custody. *United States v. Brown*, 136 F.3d 1176, 1182 (7th Cir. 1998).
>
> .    .    .
>
> Some of the witnesses are located at extreme distances from the Southern District of Illinois, including witnesses located in Paris, France, Arizona, Arkansas.

(Cr. Doc. 334).

Thus, Rosenblum stipulated to the chain of custody to avoid unnecessarily prolonging an already lengthy expectation of trial. This stipulation does not amount to ineffective assistance. Adams does not claim the evidence was

---

[4] Adams has most recently filed a motion to supplement his petition in regards to his Claim 6 (Doc. 18). The Court grants the motion. However, even considering these documents, Adams' Claim 6 is meritless for the reasons stated above.

tampered with, nor does he suggest any irregularity demonstrative of a break in the chain of custody. It appears Adams equates chain of custody with the evidence necessary to convict an individual for possession. Adams argues that if his counsel had disputed chain of custody, then the jury would have decided that "control" of the marijuana never left the government. The Seventh Circuit has affirmed that Adams took possession of the marijuana. Had Rosensblum not stipulated to chain of custody, this would not have changed the fact that Adams possessed the marijuana, it would have only served to needlessly prolong trial. Thus, Adams' Claim 6 does not demonstrate that this Court should vacate his possession conviction.

### c.  Failure to Argue Lack of Ability to Control: Claim 8

Adams' Claim 8 argues Hale was ineffective for failing to argue at trial that Adams could not have "controlled" the marijuana as it was in a part of the van he allegedly could not access. On appeal, Fein argued that Adams did not have the ability to control the marijuana. The Seventh Circuit did not find such an argument convincing.  For the reasons stated above, Hale was not ineffective for failing to raise every conceivable argument relative to Adams' possession charge. Moreover, the government has presented evidence that the key Adams accepted provided him access to the cargo area.

Adams' Claim 8 additionally states that he had a paralegal speak with two jurors and that one juror stated,

> [S]he did not believe Adams had possession of the marijuana while it was inside the van, but she found him guilty because he had the

ability to control the marijuana in the sense that he could have say[sic] on when and where the marijuana would be delivered since he would be the one distributing—"selling"—it.

(Doc. 1-1, p. 39). In granting the government's motion for more definite statement and production of documents, the Court noted that Adams' failure to provide the government with necessary evidence and information surrounding the existence of said paralegal would constitute a waiver of such allegation. Adams responded that "the government should be able to locate said paralegal by reviewing the documents filed in this Court during the period of August 2008-September" (Doc. 8). It is of course Adams' burden to provide evidence in relation to his claims and his failure to do so constitutes a waiver.

Regardless, it is not clear to this Court that an allegation concerning what a juror may have told a paralegal is relevant and admissible in this action. And once again, the Seventh Circuit affirmed Adams' conviction for possession. He has not presented the Court with the ability to disturb the Seventh Circuit's holding. Adams' Claim 8 does not demonstrate he has met his burden under either prong of *Strickland*.

### d. Possession/Access (Appellate Counsel): Claim 9

In characteristically redundant fashion, Adams argues Fein's failure to argue that "(1) although Adams sat in the driver's seat, he had no access to the cargo area where the marijuana was stored; and (2) there was no evidence that Adams had the keys and the ability to access the marijuana via the secure exterior doors of the cargo compartment." The Court can swiftly dispose of this claim on

the basis of all of the above. To reiterate, as the affidavits of the agents demonstrate, the government has presented evidence that the one key in Adams' possession provided access to the cargo area. Regardless, the Seventh Circuit found Adams had at least constructive possession from the moment he accepted the key. Based on this Court's reading of the Seventh Circuit's opinion, an argument as to whether the key provided access to the cargo area would not have affected the Seventh Circuit's decision affirming Adams' possession conviction. Thus, Fein did not provide ineffective assistance of counsel for failing to argue that Adams did not have access to the cargo area.

### e. Actual Innocence: Claim 10

Adams attempts to re-cast his arguments above as a claim of actual innocence. Adams argues because the vehicle was inoperable and contained a metal barrier between the passenger compartment and the cargo area, he lacked "control" over the marijuana. He argues the Seventh Circuit's decision affirming his conviction for possession was "clearly erroneous" in light of these facts.

Adams' claim is clearly not one of actual innocence. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). Adams is merely attempting once again to circumvent the law of the case doctrine. The Seventh Circuit found the evidence sufficiently supported Adams' conviction for possession and Adams has not presented this Court with the ability to re-open that determination.

### f. Possession in Controlled Delivery: Claim 11

Adams' Claim 11 asks, "[i]s it factually and legally possible for one to *possess* a controlled drug during a controlled delivery conducted by actual federal agents or does such conduct fall under 21 U.S.C. 846, attempt to possess and conspiring[sic]?" The Seventh Circuit has answered with a resounding yes, as it found the evidence supported his conviction for possession. Adams argues that because his instant inquiry is "novel" he can raise it in this Section 2255 motion. To the contrary, as demonstrated above *ad nauseam*, this claim is simply a regurgitation of his ground raised on direct appeal regarding the sufficiency of the evidence underlying his conviction for possession. Thus, it is not "novel" and does not offer Adams the relief he seeks.

### g. Cross-Examination Regarding Key: Claim 14

Because the agents testified to "keys" as opposed to "key," Adams argues his counsel was ineffective for failing to cross-examine on this basis. Adams again argues one key versus multiple keys relates to the amount of "control" he possessed over the 1,400 pounds of marijuana. As stated above, the government has offered evidence that the key, singular, that Adams accepted provided him access to the cargo section of the van. Adams does not claim personal knowledge as to whether the key provided access to the cargo section of the van and he has not offered evidence in contradiction of the agents' sworn statements.

Moreover, the Seventh Circuit found Adams at least constructively possessed the marijuana from the moment he accepted the key and thus Adams'

argument misses the mark. On this basis, and for all the reasons stated above relative to Adams' possession-related arguments, his counsel was not ineffective for failing to cross-examine in this manner. While Adams would like a hearing to demonstrate his belief that the agents are lying, he presents no evidence or argument indicative of falsity on the part of the agents.

### h. Possession Issues Related to Indictment and Instructions: Claims 1, 5, 12, and 13

Adams' Claims 1, 5, 12, and 13, argue that the indictment and jury instructions did not specify an exact time period in relation to Adams' possession of the 1,400 pounds of marijuana and thus, the jury might have erroneously thought it could convict Adams for possessing the marijuana while it was in the "control" of the government. The government correctly states that such speculative arguments do not warrant relief.

In Claim 1, Adams argues the "general verdict is defective" because it is possible that "facts that are legally insufficient as a matter of law" persuaded the jury to convict Adams for possession. Adams argues the jury should have been instructed that Adams could not "possess and control the marijuana at the times the marijuana was in the actual custody and control of the federal agents."

Adams' Claim 5 alleges Hale and Fein provided ineffective assistance for failing to challenge the general verdict on the "grounds that it is likely that Adams was convicted for possessing marijuana at a time when the marijuana was in the custody and control of the agents."

Claim 12 similarly alleges Hale was ineffective for not requesting jury instructions "which would have limited the jury to relying on legally sufficient conduct," or for failing to request a special verdict concerning when Adams possessed the marijuana. And again, Claim 13 alleges Fein was ineffective for failing to challenge the guilty verdict based on the "faulty jury instructions."

The government responds that, "there was no argument at trial that Adams had any physical contact with, or power to exercise control over the marijuana until he obtained the key." Further, "no rational juror could have thought otherwise."

Count 2 of the third superseding indictment alleged that, "[o]n or about January 23, 2004," Adams "did knowingly and intentionally possess with the intent to distribute 100 kilograms or more of . . . marihuana" (Doc. 247). The jury was instructed that to convict Adams of possession with intent to distribute the government must prove:

First: The defendant knowingly or intentionally possessed marijuana;

Second: The defendant possessed marijuana with the intent to deliver it to another person.

(Cr. Doc. 466, Tr. Trial Day 9, at p. 11). The jury was additionally instructed that, "[p]ossession of an object is the ability to control it. Possession may exist even when a person is not in physical contact with the object but knowingly has the power and intention to exercise direction and control over it either directly or through others" (*Id.* at p. 10).

To the extent Adams raises issues distinct from those raised on direct appeal, they are non-constitutional claims that are procedurally defaulted. To the extent they could possibly be construed as constitutional claims, Adams does not demonstrate cause and prejudice. Regardless, Adams' speculative arguments are meritless. As to Adams' claims of ineffective assistance, Adams' attorneys were not ineffective for failing to raise Adams' instant concerns.

Adams relies on *Yates v. United States,* 354 U.S. 298 (1957), holding "a verdict [must] be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 312. *Yates* is limited to cases in which one of the grounds is legally, and not merely factually, inadequate. *See Griffin v. United States*, 502 U.S. 46, 59-60 (1991).

Adams has not demonstrated that the jury was improperly instructed. The jury was not instructed on alternate theories of guilt and did not return a general verdict that may have relied on a legally invalid one.  Further, the government did not theorize that Adams possessed the marijuana "through" the federal agents or Bustos. Adams accepted the keys from the agents, entered the van, and attempted to start it. The Seventh Circuit found this evidence supported his conviction for possession. Adams has not demonstrated the existence of a *Yates/Griffin* error. Adams' trial and appellate counsel were not ineffective for failing to raise a meritless argument.

**2. Claims Other Than Those Related to the Possession Issue**

    **a. Career Offender Predicate Convictions: Claims 2 and 7**

The Court sentenced Adams as a career offender, in light of a 1993 conviction for assault with a deadly weapon on a peace officer and a 1997 conviction for sale of a controlled substance (Cr. Doc. 476, paras. 47, 56, 58, and 62). Adams argues this was in error.

    **i. 1993 California Violent Felony: Claim 2**

Adams' Claim 2 argues his 1993 conviction is constitutionally invalid as it was "rendered without the opportunity, or right to counsel, to challenge such conviction." Thus, his sentence, "is unconstitutional because it was enhanced on the basis" of the 1993 conviction. Adams argues the California "Adult Superior Court lacked jurisdiction to prosecute and sentence Adams as an adult," because he was 17 years old at the time of the offense and sentence, although the California court erroneously believed he was 20 years old.

On October 21, 1992, while confined at the N.A. Chaderjain California Youth Authority (CYA), Adams, "assaulted youth counselor Karen Tzikas, hitting her multiple times with a sock containing a can of beans while another ward held her down." *People v. Adams,* 2011 WL 4839074, *1 (Cal. App. Oct. 13, 2011), Adams was 17 years old when he committed the crime and was arraigned as an adult on charges of assault with a deadly weapon on a peace officer. *Id.* Counsel represented Adams when he pled guilty to the assault charge on February 18,

1993. According to the arrest forms and abstract of judgment, Adams was 20 years old when he committed the offense. *Id.*

In 1995, Adams filed three petitions for writs of habeas corpus in the California state courts challenging the 1993 assault conviction. The courts denied all three. In 2010, Adams filed a petition for writ of error *coram nobis* in the superior court, requesting that the court vacate the 1993 judgment. The superior court denied Adams' petition. *Id.* at * 2.

The California Court of Appeals affirmed the superior court's denial of Adams' petition for a writ of error *coram nobis* on October 13, 2011. *Id.* The court found:

> Defendant has not established the elements necessary to obtain *coram nobis* relief. First, the relevant fact that existed at the time of trial was that defendant was 17 years old when he committed the crime at CYA. Defendant, who was aware of that fact, admits that the court was laboring under the misimpression that he was 20 years old, and that he did nothing to disabuse the court of that notion. He claims he only discovered the court's mistake in May 1995 when the court denied his habeas petition, and he attempted to rectify the problem thereafter. However, it is worth noting that the circumstances begged the question, given that defendant was confined as a ward at the CYA when he committed the crime for which he was arraigned in adult court. The fact that the prosecution charged and tried him as an adult should—at the very least—have prompted him to question the appropriateness of the adult proceedings and alert someone to his true age, an act which surely would have prevented not only rendition of the judgment but most likely the trial (plea) itself.

> In any event, while defendant may have been unaware of the court's mistake at the time he entered his guilty plea, he was always aware of his true age but failed to raise the issue until the filing of his second habeas petition, and even then failed to provide any evidence to contradict the information contained in the court files. Despite having been convicted by his plea and sentenced, having served his state

> prison sentence, and having filed three habeas petitions, all of which were denied, it was not until 2010, 17 years after entry of judgment, that he finally produced a birth certificate as evidence to substantiate his claim.

*Id.* at * 3. Thus, as Adams failed to satisfy his burden to produce evidence to establish the relief sought, the court affirmed the judgment of denial. *Id.* at ** 3-4. The California Supreme Court denied Adams' petition for review on January 11, 2012 (*See* Doc. 9-6); *see also People v. Adams*, 2013 WL 2251739 (Cal. App. May 20, 2013) (affirming trial court's denial of "motion to file successive petition for writ of error *corum nobis*," "motion to correct error in judgment," and "motion to strike and void" the "order denying habeas corpus petition").

Notably, Adams failed to alert the Court to the appellate decisions cited above. Most obviously, the unfavorable nature of the decisions motivated Adams' omission.

Adams states the record was not developed in the district court. Thus, he was not able to raise the validity of the 1993 conviction on direct appeal. However, at Adams' first sentencing hearing on December 12, 2008, Adams objected to the 1993 conviction for the reasons instantly argued (Cr. Doc. 488, pp. 44-45). The Court overruled Adams' objection (*Id.* at p. 48). Adams did not raise this issue in his initial direct appeal.

On remand, at Adams' second sentencing on May 12, 2011, Adams again attempted an objection to the 1993 conviction, noting, "I'm real confident that this prior [1993 conviction] will be vacated, and I ask that the Court take that into consideration" (Cr. Doc. 529, p. 20). Fein adopted and expanded on Adams'

renewed objection. While the Court noted Adams' objections were not timely and most likely waived (*Id.* at pp. 23-28), it alternatively went on to note that the Court could not assume a conviction would be overturned or vacated. It refused, "to have an appeal within [the sentencing proceeding] to determine whether or not" the 1993 conviction was valid. The Court further noted, "[t]hat's a matter to be handled by the California Court of Appeals, and once there's a final decision in that court system, then the Court here can rule accordingly if it's appropriately brought to the Court's attention" (*Id.* at pp. 72-73). As explained above, Adams' conviction has not been vacated or overturned.

Adams did not raise this issue in his appeal of the sentence imposed on remand. In affirming the sentence imposed on remand, the Seventh Circuit noted that Adams made no argument on direct appeal concerning his status as a career offender and also stated, "[t]here is no dispute that the 1993 conviction constitutes a crime of violence and, as such, qualifies as one of the two predicate convictions necessary to establish Adams' career offender status." *Adams,* 451 Fed. App'x. at 578.

Adams has not sufficiently demonstrated cause for his failure to raise his instant arguments on initial direct appeal. Moreover, his attempts to have the 1993 conviction vacated or overturned were ultimately unsuccessful. Thus, his claims are not properly before the Court.

Alternatively, his claim fails on its merits. Adams argues his 1993 conviction is constitutionally invalid. Adams cites *Daniels v. United States*, 532

U.S. 374 (2001). In *Daniels* the Section 2255 petitioner challenged 1978 and 1981 guilty pleas which served as predicate offenses for an armed career criminal (ACCA) sentence. The petitioner claimed the pleas were not made with a full understanding of the essential elements of the offenses and thus resulted in convictions in violation of due process. *Id.* at 379. In light of the need for, "ease of administration and [in] the interest [of] promoting the finality of judgments," *id.* at 378, the Supreme Court explained:

> [W]e have held that if, by the time of sentencing under the ACCA, a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence. This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings. No other constitutional challenge to a prior conviction may be raised in the sentencing forum.

*Id.* at 382 (citing *Custis v. United States*, 511 U.S. 485, 490-97 (1994)).

And further,

> If, however, a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255. A defendant may challenge a prior conviction as the product of a *Gideon* violation in a § 2255 motion, but generally only if he raised that claim at his federal sentencing proceeding.

*Id.* In *Daniels*, the Supreme Court's reference to a *Gideon* violation denotes a total deprivation of counsel. *See Gideon v. Wainwright*, 372 U.S. 335 (1963). Adams

does not argue that he was not represented by counsel when he pled guilty to the 1993 assault charge and it is clear from the relevant documentation that he was in fact so represented. It appears Adams argues that because he was allegedly not represented by counsel during his first habeas corpus proceeding in the California state courts, *Daniels* allows Adams to challenge the validity of his 1993 conviction in this Section 2255 petition. This Court does not agree.

Moreover, Adams has not presented a "rare case[] in which no channel of review was actually available to [him] with respect to a prior conviction, due to no fault of his own," *Daniels,* 532 U.S. at 383, such as new evidence demonstrating Adams' innocence of the assault charge could conceivably present. *See Lackawanna County Dist. Attorney v. Cross,* 532 U.S. 394, 405 (2001). As explained above, Adams unsuccessfully challenged the 1993 conviction in California state courts numerous times.

Adams further relies on *Martinez v. Ryan,* --- U.S. ----, 132 S. Ct. 1309 (2012), in support of his allegation that he had a right to counsel in his state collateral proceedings. *Martinez* held that where state law requires that petitioners raise ineffective assistance of trial counsel claims in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Id.* at 1320-21. *Martinez*

does not hold that counsel is constitutionally required in every collateral proceeding. *Martinez* is inapplicable to the case at hand.[5]

This Court reviewed Adams' objections to the use of the 1993 conviction as a predicate felony and rejected those arguments at both sentencing hearings. The California courts have held Adams' 1993 assault conviction is valid. Thus, Adams has not demonstrated that this Court should hold the 1993 assault conviction invalid. Accordingly, it properly served as a predicate violent felony establishing Adams' status as a career offender. To the extent Adams argues ineffective assistance of counsel for (federal) counsel's failure to raise his instant arguments on direct appeal he cannot meet his burden under *Strickland* as the conviction is valid.

### ii.  Prior 1997 California Drug Felony: Claim 7

Adams argues ineffective assistance of Fein and Gomric for, "failing to challenge the PSR and district court's erroneous findings that petitioner's prior drug offense qualified as a controlled substance offense pursuant to U.S.S.G. 4B1.2."

As Adams' PSR demonstrates, his status as a career offender is based on his 1993 conviction detailed above, in addition to "one prior felony conviction for

---

[5] One of Adams' numerous "supplements," filed without leave of this Court, cites the Ninth Circuit's recent decision in *Dubrin v. People of California*, 720 F.3d 1095 (9th Cir. 2013) (Doc. 16). In *Dubrin*, the Ninth Circuit recognized an exception to *Lackawanna*, allowing a petitioner in a Section 2254 petition to challenge a prior conviction used to enhance a current sentence when a state court refuses without justification to rule on the constitutional claim without fault of the petitioner. *Id.* at 1098. This non-binding decision does not persuade this Court to hold the 1993 conviction invalid for many reasons. Most notably, Adams has not demonstrated that the California state courts refused to rule on a constitutional claim without justification and without fault on the part of Adams.

sale of a controlled substance" (Cr. Doc. 474, ¶ 47). The PSR describes the offense as "Transport or Sell Narcotic/ Controlled Substance" and states, "[a]ccording to the felony complaint, on January 24, 1996, Adams unlawfully sold cocaine base" (*Id.* at ¶ 58; *see also* Cr. Doc. 69-1). The statute underlying his 1997 conviction in California, Cal. Health & Safety Code § 11352(a), criminalizes the transportation as well as the possession and distribution of narcotics. As the mere transport of narcotics would not qualify as a controlled substance offense under U.S.S.G. § 4B1.2, Adams argues the "government failed to carry its burden and prove that petitioner actually ple[]d guilty to 'selling' cocaine as opposed to 'offering' or 'transporting.'" Adams argues the criminal complaint cannot be used to establish whether the conviction qualifies as a controlled substance offense under the career offender guideline.

In Adams' successive appeal, Adams also argued that the record did not establish his 1997 controlled substance conviction qualified as a career offender predicate offense. Adams argued that this Court, "relied solely on the [PSR's] characterization of the conviction as one for narcotics trafficking rather than transportation, and that the court failed to consult the relevant portions of the state judicial record, including the charging document, to determine the precise nature of the offense with which he was actually charged in California." *See Adams*, 451 Fed. App'x. at 578 (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

While noting Adams waived any argument as to the nature of this prior conviction as he did not raise it in his first appeal, the Seventh Circuit stated, "[i]n any case, the belated challenge as to the nature of Adams' prior conviction fails on the merits." *Id.* The Seventh Circuit explained:

> The felony complaint underlying Adams' 1997 conviction, as well as the judgment itself, are both in the record, having been attached to an "Information Charging Prior Offenses" that the government filed in advance of Adams' trial. R. 69. The complaint, which captions the charge as "Sell/Furnish Controlled Narcotic Substance," alleges that "[o]n or about January 24,1996[,] QUAWNTAY ADAMS did unlawfully sell, furnish, administer, and give away, and offered to sell, furnish, administer, and give away controlled substances, to wit: cocaine base, in violation of Health and Safety Code Section 11352(a)." R. 69–1 at 1. The complaint thus establishes that Adams was charged not with transportation of a narcotic, but rather with the distribution and attempted distribution of a narcotic. The district court itself pointed to the complaint's language in rejecting Adams' contention. R. 529 29–30. In short, the record makes clear that the court complied with its obligation under *Taylor* to ascertain the nature of the prior offense; and given the plain language of the felony complaint, the 1997 California conviction was properly treated as a controlled substance offense.

Thus, Gomric and Fein were not ineffective to the extent they did not raise Adams' instant argument. As the Seventh Circuit has already stated, Adams' claim has no merit.[6] As the Seventh Circuit stated above, the Court properly looked to the plain language of the felony complaint to establish the nature of the offense.[7]

---

[6] Adams argues the Court should have instead looked to a "second amended information." Notably, it does not appear that Adams has provided the Court with the alleged second amended information and regardless, he does not provide an argument as to how it would demonstrate that his conviction does not qualify as a controlled substance offense.

[7] The Court notes that at Adams' sentencing hearing on remand, the Court found Adams waived any objection to the 1997 conviction. However, in looking at the merits in the alternative, the Court relied on the plain language of the felony complaint (Cr. Doc. 529, p. 29).

### b. Prejudicial Spillover: Claim 3

Adams' Claim 3 argues, "prejudicial spillover from the two counts Adams was acquitted for may have tainted the verdict of the possession of marijuana." Adams argues his counsel was ineffective for failing to raise this issue on direct appeal. He also argues he has not had an opportunity to raise this claim as the money laundering charge was vacated on direct appeal.

As to Adams' statement that he has not had a previous chance to argue his claim, he is incorrect. On direct appeal, Adams challenged the money laundering conviction. The Seventh Circuit agreed that the evidence did not support the conviction for conspiracy to commit money laundering. Further, the jury acquitted Adams of conspiracy to possess and distribute marijuana. Thus, he could have raised his "prejudicial spillover" claim in his initial direct appeal but failed to do so. He does not demonstrate cause and prejudice for this failure.

Further, as to Adams' claim of ineffective assistance of counsel, Fein successfully argued for reversal on the money laundering count. Adams' vague "prejudicial spillover" argument, unsupported by legal authority, does not demonstrate his counsel was ineffective. As the Seventh Circuit has explained,

> When, as is often the case . . . , the jury acquits a defendant of some counts of a multi-count indictment, the defendant is not entitled to a new trial on the counts of which he was convicted, on the theory that the conviction was tainted by evidence, which the jury heard, relating to the counts on which it acquitted. It is not like a case where evidence of other crimes is admitted in violation of Fed. R. Evid. 404 and the question is whether the error is harmless. No rule of evidence is violated by the admission of evidence concerning a crime of which the defendant is acquitted, provided the crime was properly joined to the crime for which he was convicted and the crimes did

not have to be severed for purposes of trial. It makes no difference, moreover, whether the jury acquits on some counts or the trial or reviewing court sets aside the conviction.

*United States v. Holzer*, 840 F.2d 1343, 1349 (7th Cir. 1988) (citations omitted);

*see also United States v. Black*, 625 F.3d 386, 390 (7th Cir. 2010).

In Adams' case, the jury was properly instructed as to the elements of the offenses and the need to consider each count separately. Further, the counts were properly joined. Fein was not ineffective for failing to raise "prejudicial spillover," as such a claim would not have changed the outcome of Adams' appeal.

### c. Portrayal as Womanizer: Claim 4

Finally, Adams argues, "[t]he government prejudiced petitioner by portraying him as a womanizer who used 'white women' to facilitate his crimes, thereby, using race to inflame the predominately white female jury." Adams argues Fein was ineffective for failing to raise this argument on direct appeal.

At trial, Audrey Day, Adams' former girlfriend, testified that she "busted" Adams using an adult swinger's website. Day testified that Adams explained that he used "the website to meet women, specifically women that he targeted—I think the word he used was desperate women that he could romance, coerce into working for him" (Tr. Trial Day 3, Doc. 460, at p. 106). Day then stated, "[i]n a separate conversation he told me that he preferred white women as his workers . . . [b]ecause they were less likely to be pulled over by the police" (*Id.* at 107). Similarly, Adams' co-defendant, Nicole Bowline, testified that Adams told her she

could "bring any white female" along on with her extensive drug-moving car rides, "[b]ecause law enforcement don't pull over white females" (*Id.* at p. 179).

Adams argues this evidence was not relevant and was, "used simply to play on the race and sex of the predominately white female jury, inflaming their minds and hearts, preventing Adams from receiving a fair trial." Adams did not raise this issue in his direct appeal, and thus he cannot do so now. Moreover, Fein was not ineffective for raising this issue on appeal. The above testimony was relevant to Adams' mode of operation. In evaluating Fein's assistance as a whole, he was clearly not ineffective for failing to raise Adams' instant claim on direct appeal. Adams' argument that testimony describing his preference for white women in the facilitation of his crimes was irrelevant and inadmissible would not have changed the outcome of his appeal, in light of the evidence of Adams' guilt.

### IV.    Certificate of Appealability

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability has been granted. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). For a court to issue a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," meaning, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)); 28 U.S.C. § 2253(c)(2).

For the reasons stated above, Adams' claims do not warrant a certificate of appealability, as reasonable jurists would not debate that the petition should not receive encouragement to proceed further. Therefore, the Court **DENIES** Adams a certificate of appealability.

### V.     Conclusion

For the reasons stated above. Adams' motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence, is **DENIED** (Doc. 1). Adams' claims are dismissed with prejudice. The Court shall not issue a certificate of appealability. The Clerk is instructed to close the file and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 3rd day of December, 2013.

Digitally signed by David R. Herndon
Date: 2013.12.03 11:55:39 -06'00'

**Chief Judge**
**United States District Judge**